*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

Y. S. MOHAN, M.D.,

    Plaintiff-Appellant,

v

ANIL B. KUMAR, M.D.,

    Defendant-Appellee,

and

MICHIGAN UNITED PHYSICIANS and
UNIVERSAL CARE SURGICAL CENTER,

    Defendants.

UNPUBLISHED
July 14, 2026
2:58 PM

No. 374961
Oakland Circuit Court
LC No. 2024-208234-CK

Before: RICK, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this dispute between two physicians involving their alleged business partnership, plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Plaintiff, a board-certified neurosurgeon, and defendant, a board-certified urologist, first became acquainted in 1998 during plaintiff's general surgery residency at North Oakland Medical Center, where defendant served as an attending physician in urology. Plaintiff contends that a personal and professional relationship developed, with defendant serving as a mentor. In 2014, following completion of his neurosurgery residency at Henry Ford Hospital, plaintiff relocated to California to pursue employment. Defendant subsequently assisted plaintiff in securing professional opportunities in Michigan, prompting plaintiff's return to the state in 2016. Of particular relevance to the present matter, defendant offered to facilitate plaintiff's establishment of a neurosurgery practice in Michigan by permitting plaintiff to work at defendant's surgical center and by proposing a partnership arrangement.

In March 2019, plaintiff identified a property referred to as the "15 Mile location," and the parties agreed to jointly acquire the property for the purpose of establishing a medical practice. The acquisition price was approximately $2.4 million, with each party holding a 50 percent ownership interest. Plaintiff asserts that it was understood the parties would be equal partners in the 15 Mile center, which was to be developed into a surgical center contingent upon obtaining a Certificate of Need (CON). [1]

During the interim period, at defendant's request, plaintiff brought surgical cases to Kumar Surgical Center in Rochester Hills. Plaintiff contends that these actions were undertaken in furtherance of the parties' partnership agreement. While practicing at Kumar Surgical Center, plaintiff financed his own surgical equipment and instruments. Plaintiff maintains that, in exchange for his capital contributions, sweat equity, and provision of professional services, he was to receive two-thirds of the net profits generated by cases he brought to Kumar Surgical Center. The parties subsequently agreed to amend their partnership arrangement, resulting in defendant holding a 51 percent interest and plaintiff a 49 percent interest. Under the modified agreement, plaintiff would receive two-thirds of the net profits from cases brought to Kumar Surgical Center by plaintiff and by an additional physician whom plaintiff had recruited.

Over time, plaintiff came to believe that he was not receiving his contractual share of the profits from Kumar Surgical Center. Despite defendant's repeated assurances, plaintiff alleges that defendant did not fulfill his obligations regarding profit distribution. When defendant refused plaintiff's request to review the relevant accounting records, plaintiff elected to sell his interest in the 15 Mile location and retained legal counsel to negotiate the sale.

Plaintiff and defendant subsequently executed a Membership Interest Purchase Agreement (the "Purchase Agreement"), which became effective on June 17, 2023. The Purchase Agreement is central to the issues presented in this appeal.

The Purchase Agreement expressly identifies the parties as plaintiff, defendant, and 15 Mile Center, LLC (the "Company"). The agreement specifies that plaintiff owned a 49 percent membership interest in the Company, defendant owned the remaining 51 percent membership interest, and the Company owned certain real property located on 15 Mile Road in Sterling Heights, Michigan. Pursuant to the terms of the Purchase Agreement, plaintiff agreed to sell his 49 percent membership interest in the Company to defendant for $915,000, "[s]ubject to the terms

---

[1] The Michigan Supreme Court has explained regarding a certificate of need:

> The certificate of need program was initiated by 1972 PA 256 in an effort to contain health care costs by eliminating the proliferation of unnecessary medical treatment facilities. To achieve this goal, the Legislature created a permit system centered on the idea that permission to build a new facility or modify an existing one would only be granted when there was need within the community for such growth. [*West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515, 520; 550 NW2d 223 (1996) (citation omitted).]

and conditions of this Agreement." Section VI of the Purchase Agreement included the following release:

> Buyer [defendant] and Seller [plaintiff] agree to mutually release each other, including their spouses, heirs, successors, assigns, estates, members, managers, employees, shareholders, officers and directors along with all of their agents, attorneys, successors and assigns from any claim of any nature whatsoever, accrued or not accrued, known or unknown, from the beginning of time until the date of execution of this Agreement, including any all [sic] claims as they relate to the ownership and operation of the Company, **except** for the obligations of each undertaken to the other, and the rights expressly allowed and preserved, by this Agreement.

Paragraph 7.7.8 stated that the parties were "not relying upon any representations or warranties, oral or written, under oath or otherwise, from the other Parties, other than those specifically stated herein, so that there can be no claim by any of the Parties that this Agreement was procured or induced by fraud or any other claims that would attack the validity of the terms of this Agreement." (Purchase Agreement.) Paragraph 7.12 provided:

> This Agreement and all related documents, schedules, exhibits, or certificates represent the entire understanding and agreement between the Parties with respect to the subject matter and supersede all prior agreements or negotiations between the Parties. This Agreement, together with the Exhibits attached hereto and those additional agreements enumerated in this Section, supersede all prior agreements and understandings between the Parties with respect to such subject matter. No promise, covenant, condition, warranty or representation with respect to the subject matter of this Agreement shall be of any force or effect unless expressly set forth herein.

In his affidavit, plaintiff stated that defendant repeatedly assured him that the "Rochester Hills partnership issue" would be resolved after the sale of the 15 Mile location. Plaintiff also averred that he viewed the Purchase Agreement as pertaining only to the 15 Mile location; that there "were never any discussions concerning the partnership wind-down or profits due and owing at the time of the building sale"; and that defendant "personally made it clear that the partnership issue would be resolved after the sale, most likely because funds would be readily available. According to plaintiff multiple attempts were made to resolve the remaining partnership issues related to the Kumar Surgical Center or Rochester Hills[2] location.

Plaintiff subsequently initiated this action against defendant, naming Michigan United Physicians and Universal Care Surgical Center, LLC as additional defendants. Plaintiff alleged causes of action for breach of contract, unjust enrichment, and sought an accounting. Thereafter,

---

[2] Although plaintiff switches designations in his affidavit, it appears that the Kumar Surgical Center, the Farmington Hills location, and the Farmington Hills partnership all refer to plaintiff's work with defendant at the Kumar Surgical Center.

plaintiff voluntarily dismissed Michigan United Physicians and Universal Care Surgical Center, LLC without prejudice.

Plaintiff thereafter filed a first amended complaint, naming only defendant. In the amended complaint, plaintiff alleged that defendant solicited plaintiff to join defendant's medical practice in Farmington Hills and, as an inducement, represented that plaintiff would be compensated for surgical procedures performed as well as a share of the profits derived from treating surgical patients at defendant's facility. Defendant also sought plaintiff's affiliation in an additional medical facility in Sterling Heights for which defendant was attempting to obtain a CON, and defendant subsequently included cashflow projections of approximately $1.5 million in neurosurgery income in his CON application.[3] Plaintiff alleged that he invested capital and time in both the Rochester Hills and Sterling Heights locations, but defendant failed to make payments as promised. Plaintiff acknowledged that defendant purchased his interest in 15 Mile Center, LLC, but he nonetheless alleged that he was denied his rightful entitlement to revenues he personally generated at the Farmington Hills facility.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10), arguing, inter alia, that plaintiff's claims were barred by a broad mutual release contained within the Purchase Agreement executed by the parties. Defendant maintained that the release was not limited to disputes involving the 15 Mile Center but rather encompassed all potential claims plaintiff may have had against defendant, regardless of subject matter.

The trial court granted defendant's motion for summary disposition. Plaintiff now appeals as of right.

## II. STANDARD OF REVIEW

This Court reviews a trial court's summary disposition ruling de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Issues involving the construction of a contract present questions of law that are also reviewed de novo. *Shay v Aldrich*, 487 Mich 648, 656; 790 NW2d 629 (2010).

A summary disposition motion may be granted under MCR 2.116(C)(7) if judgment is "appropriate because of release," or numerous other potential dispositions of a claim before the action is commenced. MCR 2.116(C)(7). When reviewing a summary disposition ruling under MCR 2.116(C)(7), this Court must "consider all documentary evidence and accept the complaint as factually accurate unless affidavits or other documents presented specifically contradict it." *Shay*, 487 Mich at 656. "The scope of a release is governed by the intent of the parties as it is expressed in the release." *Rinke v Auto Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344 (1997).

Summary disposition is properly granted under MCR 2.116(C)(8) if the "opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone," and the motion "may only be granted when a claim is so clearly unenforceable

---

[3] In contrast, defendant's projected urology income was less than $500,000.

that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). The evidence submitted by the parties must be considered in the light most favorable to the party opposing the motion, and the motion "may only be granted when there is no genuine issue of material fact." *El-Khalil*, 504 Mich at 160.

III. ANALYSIS

Plaintiff's appellate argument centers upon the construction and enforceability of the mutual release provision contained in the parties' purchase agreement. In resolving disputes as to the effect or extent of a contractual release, this Court applies well-established principles of contract interpretation. The analysis is guided by the foundational maxim that, where the language of a release is clear and unambiguous, it must be enforced as written, absent evidence of fraud, duress, mutual mistake, or unconscionability. See *Cole v Ladbroke Racing Michigan, Inc*, 241 Mich App 1, 13; 614 NW2d 169 (2000). Accordingly, our proper function is not to rewrite the parties' agreement under the guise of interpretation, but rather to ascertain and effectuate the intent of the parties as expressed in the plain language of the contract. *Id*. The question of whether a release is ambiguous, and thus subject to judicial construction, is itself a question of law for the court. *Rinke*, 226 Mich App at 435.

The goal of contract interpretation is to "ascertain the intent of the parties at the time they entered into the agreement." *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021) (quotation marks and citation omitted). "If the text in the release is unambiguous, the parties' intentions must be ascertained from the plain, ordinary meaning of the language of the release." *Rinke*, 226 Mich App at 435. If contractual language is ambiguous, however, then a court may consider extrinsic evidence to determine the parties' intent. *Shay*, 487 Mich at 660. "A contract is ambiguous only if its language is reasonably susceptible to more than one interpretation." *Rinke*, 226 Mich App at 435.

Furthermore, because releases are generally treated as contracts, they are also "subject to the parol evidence rule, which prohibits the use of extrinsic evidence to interpret unambiguous language within a document." *Shay*, 487 Mich at 667. More specifically, the parol evidence rule provides that "[p]arol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998) (quotation marks and citation omitted; alteration in original). "[T]he parol evidence rule addresses the fact that disappointed parties will have a great incentive to describe circumstances in ways that escape the explicit terms of their contracts." *Id*. (quotation marks and citation omitted). "The practical justification for the rule lies in the stability that it gives to written contracts; for otherwise either party might avoid his obligation by testifying that a contemporaneous oral agreement released him from the duties that he had simultaneously assumed in writing." *Id*. (quotation marks and citation omitted).

Here, as previously noted, the parties executed a purchase agreement for defendant's purchase of plaintiff's membership interest in 15 Mile Center, LLC. The purchase agreement contained the following mutual release:

> Buyer [defendant] and Seller [plaintiff] agree to mutually release each other, including their spouses, heirs, successors, assigns, estates, members, managers, employees, shareholders, officers and directors along with all of their agents, attorneys, successors and assigns from any claim of any nature whatsoever, accrued or not accrued, known or unknown, from the beginning of time until the date of execution of this Agreement, including any all [sic] claims as they relate to the ownership and operation of the Company, **except** for the obligations of each undertaken to the other, and the rights expressly allowed and preserved, by this Agreement.

The language of the release is unequivocal in manifesting the parties' intent to discharge each other from any and all claims or potential claims "of any nature whatsoever," except as expressly preserved in the Purchase Agreement. Although the release expressly references claims related to the ownership and operation of 15 Mile Center, LLC, such specificity is superfluous in light of the all-encompassing terms of the general release, and nothing in the instrument suggests any limitation to claims involving 15 Mile Center, LLC exclusively. Even if, as plaintiff asserts, the Purchase Agreement pertained solely to the 15 Mile location, it does not follow that the parties were precluded from negotiating a comprehensive general release resolving all other potential disputes as part of the same transaction. The plain and unambiguous language of the release thus demonstrates the parties' intent, and this Court is bound to enforce it as written. See *Rinke v Auto Moulding Co*, 226 Mich App 432, 435; 573 NW2d 344 (1997). Plaintiff's appellate argument is, in essence, an impermissible attempt to introduce parol evidence to alter the clear release language in order to preserve his claim to an alleged share of profits from the Farmington Hills location; such an effort contravenes the parol evidence rule. See *UAW-GM Human Resource Ctr v KSL Recreation Corp,* 228 Mich App 486, 492; 579 NW2d 411 (1998).

Moreover, paragraph 7.7.8 stated that the parties were "not relying upon any representations or warranties, oral or written, under oath or otherwise, from the other Parties, other than those specifically stated herein, so that there can be no claim by any of the Parties that this Agreement was procured or induced by fraud or any other claims that would attack the validity of the terms of this Agreement." Paragraph 7.12 additionally provided:

> This Agreement and all related documents, schedules, exhibits, or certificates represent the entire understanding and agreement between the Parties with respect to the subject matter and supersede all prior agreements or negotiations between the Parties. This Agreement, together with the Exhibits attached hereto and those additional agreements enumerated in this Section, supersede all prior agreements and understandings between the Parties with respect to such subject matter. No promise, covenant, condition, warranty or representation with respect to the subject matter of this Agreement shall be of any force or effect unless expressly set forth herein.

"[A]n integration clause precludes admission of parol evidence that contradicts the written agreement." *UAW-GM Human Resource Ctr*, 228 Mich App at 498. "By limiting the contract to the provisions that are in writing, the parties are definitely expressing an intention to nullify antecedent understandings or agreements," and they "are making the document a complete integration." *Id*. at 494 (quotation marks and citation omitted). Thus,

> [s]ince it is only the intention of the parties to adopt a writing as a memorial which makes that writing an integration of the contract, and makes the parol evidence rule applicable, any expression of their intention in the writing in regard to the matter will be given effect. If they provide in terms that the writing shall be a complete integration of their agreement . . . the expressed intention will be effectuated. [*Id*. at 493 (quotation marks and citation omitted; ellipsis in original).]

Plaintiff contends that he and defendant had an understanding that the Farmington Hills issues would be addressed subsequent to the completion of the transaction involving the 15 Mile facility. However, the presence of an integration or merger clause in a written agreement precludes the admission of evidence of any prior or contemporaneous parol agreements, as such a clause extinguishes all antecedent agreements. *Id*. at 499. A contract containing a merger clause nullifies all prior claims, including any collateral agreements that allegedly served as inducements to enter into the contract. *Id*. at 502. Thus, in the context of a contract with a merger clause, parol evidence of purported false representations in a collateral agreement that allegedly induced a party to enter the contract would impermissibly vary the contract's terms. *Id*.

To the extent that plaintiff asserts reliance on alleged misrepresentations by defendant regarding an intent to address disputes concerning the Farmington Hills profits following completion of the 15 Mile transaction, the merger clause renders any such reliance unreasonable. *Id*. at 504-505. The Purchase Agreement expressly states that the parties were not relying on representations not specifically memorialized within the four corners of the Agreement. Had plaintiff wished to reserve the right to pursue the claims advanced in this litigation, he could have ensured that such provisions were incorporated into the Purchase Agreement.

The trial court's order granting summary disposition to defendant is affirmed. In light of this conclusion that the mutual release barred this action, there is no need to address defendant's alternative grounds for affirmance.

Affirmed. Defendant having prevailed in full is entitled to tax costs. MCR 7.219(A).

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Stephen L. Borrello